## IN RE THE CONGRESSIONAL ELECTION.

When, at a regular biennial election for a member of the United States House of Representatives, there is a failure to elect found by the General Assembly on its count of the vote, it is the duty of the General Assembly to order a new election, whether such new election be ordered before or after the ensuing fourth day of March.

*In re The Representation Vacancy, ante,* p. 621, distinguished.

THE House of Representatives of Rhode Island, April 1, 1887, adopted the following resolution, under article X. section 3, of the Constitution of the State, which provides that "the judges of the Supreme Court . . . shall . . . give their written opinion upon any question of law whenever requested by the governor, or by either house of the General Assembly:"—

Whereas, a difference of opinion has arisen as to whose duty it is to call an election of representative in the Western District, —

*Resolved,* That the opinion of the Supreme Court is hereby requested by the House of Representatives on the following resolution : " Resolved, That in case there is a failure at any election to elect a member of the House of Representatives to represent any district in the Congress of the United States, and no new election is called previous to the expiration of the term of service of the member holding office at the time of such failure to

elect, is it the duty of the General Assembly or of the governor
to call a new election? "

### OPINION OF THE COURT.

### *April* 7, 1887.

*To the Honorable the House of Representatives of the General
Assembly of the State of Rhode Island:*

We have received from your honorable body the inclosed copy
of a resolution adopted April 1, 1887. The question propounded
in the resolution is expressed in very general terms; but, as we
know of no occasion which your honorable body has of asking the
question, except in so far as it is applicable to the failure to elect
a representative to Congress at the election held in the Second
Congressional District on the second day of November last, we
shall presume that the question was intended only to relate to
failures to elect at regular biennial elections. Our opinion is that
the question, so limited, is very clearly answered by the following
citations from the Constitution and statute law of the United
States, and from the statute law of the State.

The Constitution of the United States, article I. section 4, de-
clares : " The times, places, and manner of holding elections for
senators and representatives shall be prescribed in each state by
the legislature thereof; but the Congress may, at any time, by
law, make or alter such regulations, except as to the places of
choosing senators."

The statute law of the United States, Revised Statutes of the
United States, section 26, enacts : " The time for holding elec-
tions in any state, district, or territory for a representative or
delegate to fill a vacancy, whether such vacancy is caused by a
failure to elect at the time prescribed by law, or by the death,
resignation, or incapacity of a person elected, may be prescribed
by the laws of the several states and territories respectively."

The statute law of this State, after appointing the times for
holding the regular biennial elections, as the times are appointed
in the Revised Statutes of the United States, section 25, and pre-
scribing the manner in which such elections shall be conducted,
provides as follows, to wit, Pub. Stat. R. I. cap. 11, §§ 5, 6 : —

" SECT. 5. The ballots given in at such elections shall be returned to the General Assembly at its session next ensuing such election; and those given in each district shall be separately counted; and the candidate having a majority of legal votes therein shall be declared elected, and shall be furnished by the governor with a proper certificate thereof.

" SECT. 6. If no person have such majority, the General Assembly shall order a new election at such time as they shall deem most expedient, and the ballots given at such election shall be returned to, examined, and counted by the General Assembly, or by the governor, at such time as the General Assembly shall direct; and the candidate in each district having a plurality of the legal votes given in at such second election shall be declared elected, and shall receive a certificate accordingly."

These provisions seem to us to be entirely clear, and to impose upon the General Assembly the duty of ordering a new election whenever there is a failure to elect, ascertained by the General Assembly, at any regular biennial election. It has been suggested to us that there are some members of your honorable body who doubt whether the provision for ordering a new election in section 6, above quoted, can govern, if " no new election is called previous to the expiration of the term of service of the member holding office at the time of the failure to elect," their theory being that as soon as such term expires a new term begins, and there is a vacancy in the representation, to be filled by the governor, under the Constitution of the United States, article I. section 2. Our statute, however, does not recognize any such distinction; and our statute, whether it be applied to a new election ordered before or ordered after the fourth of March next succeeding a regular election, is within the authority expressly given by Revised Statutes of the United States, section 26, above quoted. We think, too, that, independently of any act of Congress, it is within the authority given by the Constitution of the United States, article I. section 4, above quoted. The provision, with some differences immaterial to the question, has existed since 1798. From 1822 to 1868 the times of the regular biennial elections were August or April next preceding the December meetings of the new Congresses. During that period there were five

failures to elect, to wit, in 1825, 1833, 1847, 1849, and 1859. The new election in the case of every one of these failures was ordered by the General Assembly, and in every case the person elected at such new election took and held his seat without question or opposition. The power of the General Assembly to order a new election after the fourth of March, is supported by an unbroken series of precedents.

We also understand that it has been supposed that our opinion recently given to his Excellency the Governor is in conflict with this view. That opinion [1] was given in answer to a very different question. The case was this : The regular election for representatives to the forty-ninth Congress was held November 4, 1884. The ballots cast in the two districts were duly returned to the General Assembly, and the General Assembly, upon counting the ballots cast in the Second District, found that William A. Pirce had a majority of sixteen, and declared him elected. He received a certificate of election, took his seat, and held it until near the close of the term, when the seat, upon contest, was declared vacant. We gave the opinion that the case did not fall under the provision of our statute above quoted, because we considered the provision as applicable only where a failure to elect is found by the General Assembly on its own counting of the ballots. The case to which the question now submitted to us applies is a case in which the failure to elect has been found by the General Assembly on its own counting of the ballots.

We are of opinion, therefore, that the statute imposes the duty of ordering the new election upon the General Assembly, and that the governor, even if he has power under the Constitution of the United States, may well wait for the General Assembly to act so long as it is in session.

THOMAS DURFEE,
CHARLES MATTESON,
JOHN H. STINESS,
P. E. TILLINGHAST,
GEORGE A. WILBUR.

---

[1] *In re The Representation Vacancy, ante,* p. 621.